[Cite as *State v. Martinez*, 2013-Ohio-1025.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97233**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JULIA MARTINEZ

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-536693

**BEFORE:** Celebrezze, P.J., E.A. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 21, 2013

**ATTORNEYS FOR APPELLANT**

Matthew M. Nee
Nee-Bittinger, L.L.C.
27476 Detroit Road
Suite 104
Westlake, Ohio   44145

Tamika S. Laldee
Nee-Bittinger, L.L.C.
The Gehring Building
1956 West 25th Street
Suite 302
Cleveland, Ohio   44113

David H. Brown
David H. Brown, L.L.C.
The Gehring Building
1956 West 25th Street
Suite 302
Cleveland, Ohio   44113

Nicholas A. Panagopoulos II
Nicholas A. Panagopoulos II, L.L.C.
The Gehring Building
1956 West 25th Street
Suite 302
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Holly Welsh
          Kristen L. Sobieski
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Defendant-appellant, Julia Martinez, appeals from her convictions in the common pleas court. Finding no merit to the instant appeal, we affirm the decision of the trial court.

**{¶2}** On June 1, 2010, the Cuyahoga County Grand Jury returned a four-count indictment charging appellant with one count of felonious assault in violation of R.C. 2903.11(A)(1); two counts of felonious assault in violation of R.C. 2903.11(A)(2); and one count of domestic violence in violation of R.C. 2919.25(A). On June 15, 2010, appellant appeared before the trial court with counsel and entered a plea of not guilty to all counts.

**{¶3}** Following numerous continuances, appellant's jury trial commenced on June 15, 2011. Before the jury was empaneled, the trial court dismissed one count of felonious assault in violation of R.C. 2903.11(A)(2) at the state's request. Thereafter, the following facts were presented to the jury.

**{¶4}** The charges in this case arose out of an altercation between appellant and her mother, Juana Cruz, on April 19, 2010. On that date, Juana invited appellant's 17-year-old daughter, K.M., to her house. Juana asked K.M. to return two rings that had previously been left at K.M.'s house by Juana's 13-year-old daughter, S.M.

{¶5} During the visit, Juana learned that K.M. had only returned one of the rings. As a result, tensions rose in the house between Juana and her granddaughter. Eventually, K.M. became verbally aggressive towards Juana and was trying to get S.M. to leave the house with her. At that time, Juana told K.M. that she needed to call appellant to come pick her up. Subsequently, Juana called 911 to prevent S.M. from leaving the house with K.M.

{¶6} At trial, S.M. testified that when appellant arrived at the house, she observed appellant suddenly burst through the front door and immediately start choking Juana by pushing her forearm against Juana's throat. Appellant then began punching Juana in the head and face with a closed fist. S.M. never saw Juana hit appellant or K.M. Eventually, Juana managed to call 911, for a second time, to report appellant's conduct. Once officers arrived at the scene, Juana was taken to the hospital by ambulance and treated for a sore neck, bruises, and scratches.

{¶7} Officer Frank Costanzo of the Cleveland Police Department testified that he and his partner responded to Juana's residence after receiving a radio dispatch indicating that a domestic situation was in progress. When Officer Costanzo arrived on scene, he heard crying and yelling coming from inside and found Juana in her wheelchair, pinned behind a large mirror. Officer Costanzo testified that Juana told him that she and appellant had an argument over a piece of jewelry. As Officer Costanzo was completing his initial interview with Juana, appellant returned to the house and was arrested at that time.

**{¶8}** Officer Paul Scott of the Cleveland Police Department testified that on April 20, 2010, he was assigned to further investigate this matter. Officer Scott testified that during his interview with appellant, she admitted to striking her mother, but stated that she only did so in response to Juana assaulting K.M. Additionally, Officer Scott questioned Juana about the incident in her home. During the interview, Juana told Officer Scott that during an altercation over jewelry, appellant suddenly attacked her and that while the assault was occurring, K.M. struck her with a VCR player. Officer Scott further testified that Juana denied striking K.M.

**{¶9}** Following the state's case, appellant testified on her own behalf. Appellant testified that on April 19, 2010, she dropped off her daughter, K.M., at Juana's house so that K.M. could spend time with her grandmother. Shortly thereafter, appellant received a phone call from K.M. asking appellant to come pick her up. When appellant arrived at Juana's house to pick up K.M., she observed K.M. and Juana arguing at the front door of the house. Appellant claimed that as she attempted to enter Juana's house to see why they were arguing, she tripped while going up the front steps, and fell into Juana. Appellant testified that after she tripped into Juana, Juana pushed and subsequently struck K.M. in her face with a closed fist. Appellant admitted that in response to Juana striking K.M., she hit Juana three times, stating "she pushed my daughter and then she comes across and punches her in the face, and then she went to lunge at her again and I stepped in front of my daughter and I hit my mother." K.M.'s testimony at trial reflects appellant's version of the altercation.

**{¶10}** At the conclusion of the trial, the jury found appellant guilty of domestic violence and a lesser included misdemeanor assault. Appellant was found not guilty on the remaining felonious assault count. At sentencing, the trial court imposed a six-month term of imprisonment.

**{¶11}** Appellant brings this timely appeal raising two assignments of error for review:

> I. The trial court's excluding taped conversations between witnesses gutted appellant's defense to such an extent that the ruling obviated her Sixth Amendment right to confrontation.

> II. Appellant's conviction was against the manifest weight of the conflicting evidence presented at trial and did not overcome her affirmative defense that she acted in defense of her daughter.

Law and Analysis

I. Exclusion of Evidence

**{¶12}** In her first assignment of error, appellant argues that the trial court erred in excluding taped conversations between K.M. and S.M. Appellant contends that the trial court's ruling "gutted her defense to such an extent that it obviated her Sixth Amendment right to confrontation."

**{¶13}** The decision whether to admit or exclude evidence at trial falls within the sound discretion of the trial court. *State v. Robb*, 88 Ohio St.3d 59, 2000-Ohio-275, 723 N.E.2d 1019. The record must reflect an abuse of discretion, i.e., that the trial court acted in an unreasonable, arbitrary, or unconscionable manner, in order for an appellate court to disturb a ruling of the trial court as to the admissibility of evidence. *State v.*

*Pruitt*, 8th Dist. No. 98080, 2012-Ohio-5418, ¶ 10, citing *State v. Hamilton*, 8th Dist. No. 86520, 2006-Ohio-1949, ¶ 19.

{¶14} Evid.R. 613(B) governs the admissibility of extrinsic evidence of a prior inconsistent statement.  It states, in relevant part:

> Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
>
> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2) The subject matter of the statement is one of the following:
>
> (a) A fact that is of consequence to the determination of the action other than the credibility of a witness * * *.

{¶15} Extrinsic evidence is not admissible under Evid.R. 613(B) unless a proper foundation is laid for its admission.  A foundation must be established through direct or cross-examination in which: (1) the witness is  presented with the former statement; (2) the witness is asked whether he or she made the statement; (3) the witness is given an opportunity to admit, deny, or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness regarding the inconsistent statement.  *State v. Morgan*, 8th Dist. No. 97934, 2012-Ohio-4937, ¶ 14-15, citing *State v. Theuring*, 46 Ohio App.3d 152, 155, 546 N.E.2d 436 (1st Dist.1988).

{¶16} If a witness denies making the statement, extrinsic evidence of the statement is generally admissible, provided the evidence does not relate to a collateral matter.  *State v. Soke*, 105 Ohio App.3d 226, 239, 663 N.E.2d 986 (8th Dist.1995), citing *State v.*

*Riggins*, 35 Ohio App.3d 1, 3, 519 N.E.2d 397 (8th Dist.1986). If, however, the witness admits making the prior statement, the trial court does not abuse its discretion by thereafter refusing to admit extrinsic evidence of that statement. *State v. Eason*, 8th Dist. No. 66060, 1994 Ohio App. LEXIS 4636, *13 (Oct. 13, 1994), citing *State v. Johnson*, 10 Ohio App.3d 14, 460 N.E.2d 625 (10th Dist.1983); *see also State v. Pierce*, 2011-Ohio-4873, 968 N.E.2d 1019, ¶ 82 (2d Dist.) (no need for extrinsic evidence if the witness admits making the conflicting statement).

{¶17} In the case at hand, defense counsel intended to introduce phone conversations between K.M. and S.M. that were taped by K.M. without S.M.'s knowledge. Appellant contends that the introduction of the phone conversations were necessary to impeach S.M.'s testimony at trial because the phone conversations demonstrated that S.M. generally agreed with K.M.'s version of the facts and "unequivocally establish that Juana threw the first punch."

{¶18} On review of the record, it is evident that before defense counsel had the opportunity to impeach S.M.'s testimony, the state questioned S.M. on direct about the phone conversations at issue. When questioned about her phone conversations with K.M., S.M. openly admitted that she was not truthful with K.M. during those conversations. S.M. explained that she minimized appellant's role in the assault during her phone conversations with K.M. because she considered K.M. to be her best friend and did not want any further problems in the family.

{¶19} Because S.M. admitted to making the very statements defense counsel sought to introduce through the taped phone conversations, i.e., that she had agreed with K.M.'s version of the altercation during previous phone conversations, her testimony at trial was not inconsistent with a prior statement. Accordingly, extrinsic evidence of the prior statement was not admissible under Evid.R. 613(B). *See State v. Kemp*, 8th Dist. No. 97913, 2013-Ohio-167, ¶ 40. Further, because S.M. admitted to making the previous statements, the fact that she could not remember the exact details of the taped conversations does not alter our conclusion.

{¶20} Appellant's first assignment of error is overruled.

## II. Manifest Weight

{¶21} In her second assignment of error, appellant argues that her convictions are against the manifest weight of the evidence. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the reviewing court sits as a thirteenth juror and may disagree with the factfinder's resolution of conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In its review, this court remains

mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the jury to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus.

**{¶22}** On review of the record in its entirety, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against appellant's conviction. At trial, appellant admitted to hitting Juana three times in the head and face area with a closed fist. Thus, the jury was asked to resolve the conflicting testimony concerning whether appellant acted in the defense of her child. The jury, as the trier of fact, was in the best position to weigh the credibility of the witnesses and was free to find the testimony of Juana and S.M. to be more credible than the testimony of the defense witnesses. Deferring to the jury's assessment of the credibility of the witnesses, as we must, we cannot say that the trier of fact lost its way and performed a miscarriage of justice in convicting appellant of assault and domestic violence.

**{¶23}** Appellant's second assignment of error is overruled.

**{¶24}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR